TODD KIM
Assistant Attorney General

LUTHER L. HAJEK
United States Department of Justice
Environment and Natural Resources Division
999 18th St.
South Terrace – Suite 370
Denver, CO 80202
Tel: 303-844-1376 / Fax: 303-844-1350
e-mail: luke.hajek@usdoj.gov

*Attorney for Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# EUGENE DIVISION

| | |
|---|---|
| **CASCADIA WILDLANDS**, an Oregon nonprofit corporation; and **OREGON WILD**, an Oregon nonprofit corporation, <br><br> Plaintiffs, <br><br> v. <br><br> **CHERYL ADCOCK**, in her official capacity as Field Manager for the Siuslaw Field Office; and the **UNITED STATES BUREAU OF LAND MANAGEMENT** <br><br> Defendants. | Case No. 6:22-cv-1344-MK <br><br> Hon. Mustafa Kasubhai <br><br> **DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF** |

**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Defendants Cheryl Adcock and the United States Bureau of Land Management ("BLM") hereby move this Court to dismiss Plaintiffs' Complaint in its entirety. The basis for this motion, as set forth in the accompanying memorandum, is that Plaintiffs lack standing to bring their claims under the National Environmental Policy Act ("NEPA") and the Administrative Procedure Act ("APA"), and their claims are not ripe. Defendants' motion to dismiss should therefore be granted as to all claims.[1]

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Plaintiffs' challenge to BLM's April 2022 decision record ("DR") for the Siuslaw Harvest Land Base ("HLB") Landscape Plan ("Landscape Plan") should be dismissed for lack of standing because Plaintiffs fail to allege imminent injury to their interests in the relevant planning area. The Landscape Plan authorizes a management strategy for commercial timber harvest, fuels reduction management, and other potential actions in the planning area over a period of twenty years. Plaintiffs allege that their interests in the planning area will be injured "if BLM implements the [Landscape Plan] as authorized." Complaint ¶ 21, ECF No. 1. But the Landscape Plan is not self-implementing, and BLM has not yet authorized any timber harvests or any other ground-disturbing activity of the sort that could harm Plaintiffs' alleged aesthetic, recreational, spiritual, scientific, and professional interests. Instead, a timber harvest could only go forward if BLM—after additional NEPA documentation and a 30-day public comment period—makes a separate decision in the future to implement such a harvest.

---

[1] In compliance with Local Rule 7-1(a), the parties discussed and attempted to resolve the issues raised in this motion, but were unable to do so.

Page 2 - Defendants' Motion to Dismiss

BLM does not expect that it will offer any timber harvests within the planning area for at least a year. Plaintiffs, moreover, will be able to challenge any such timber harvests if and when they are ultimately approved. Until that time, there is no impending timber harvest that might affect Plaintiffs' interests. Accordingly, Plaintiffs cannot demonstrate the requisite imminent harm necessary to establish standing, and their claims also are not ripe.

I.   **BACKGROUND**

   A.   **BLM's Forest Management Under the Oregon and California Railroad Lands Act**

Under the Oregon and California Railroad Lands Act of 1937 ("O&C Act"), the Department of the Interior ("Department") is tasked with managing the O&C lands for permanent forest production and selling the timber thereon. 43 U.S.C. § 2601. The O&C Act requires a "sustained yield … of timber supply" while "protecting watersheds, regulating stream flow, and contributing to the economic stability of local communities and industries[.]" *Id*. BLM administers the Department's O&C lands in western Oregon. U.S. Dep't of the Interior, BLM, O&C Sustained Yield Act: The Land, the Law, the Legacy (1937-1987) at 13.[2] The Siuslaw Field Office falls under the direction of the Northwest Oregon District of BLM, and manages a subset of the District's public lands west of Eugene, Oregon, including all O&C lands within the Field Office's boundaries.

BLM administers the public lands under its administrative jurisdiction based on the management direction set forth in its applicable resource management plan ("RMP"). *See* 43 U.S.C. § 1712. In 2016, BLM published the Northwestern & Coastal Oregon Record of Decision and Resource Management Plan, which is the governing RMP for the lands at issue

---

[2] Available at: https://www.blm.gov/or/files/OC_History.pdf (last visited Nov. 8, 2022).

here. 2016 ROD/RMP.[3] That RMP declared the Annual Sale Quantity ("ASQ") for 1.3 million acres of BLM-managed land in western Oregon, which includes the Eugene Sustained Yield Unit ("SYU"). 2016 ROD/RMP at 2, 6. An ASQ refers to "[t]he timber volume that a forest can produce continuously under the intensity of management described in the RMP for those lands allocated for permanent timber production." *Id.* at 289. The Siuslaw Field Office is responsible for producing a certain portion of the Northwest Oregon District's ASQ. EA at 1, attached as Ex. 1. In 2020, the Ninth Circuit issued an unpublished opinion affirming the U.S. District Court for the District of Oregon's decision upholding BLM's 2016 RMPs. *Pacific Rivers v. Bureau of Land Management,* 815 F. App'x 107 (9th Cir. 2020). The plaintiffs in *Pacific Rivers* included Cascadia Wildlands and Oregon Wild.

      **B.**     **The Siuslaw Harvest Land Base Landscape Plan**

Pursuant to the management direction in the 2016 RMP, the Siuslaw Field Office initiated a public NEPA process to begin developing a multi-decadal management strategy to contribute timber volume to the Eugene SYU's ASQ. *See* EA at 1. The ASQ for the Eugene SYU is 53 million board feet (MMbf) annually, and BLM's internal target for the Siuslaw Field Office is 7 MMbf annually. *Id.* To meet this target, the EA for the Siuslaw HLB Landscape Plan analyzed a range of potential harvest strategies on approximately 13,225 acres of Harvest Land Base ("HLB") lands within the 166,852 acres of land managed by the Siuslaw Field Office. EA at 1-2. In May of 2020, the Siuslaw Field Office prepared chapters 1 and 2 of a Draft EA and circulated it for an initial 20-day public comment period. *Id.* at 5. BLM then circulated the entire Draft EA for an additional 30-day public comment period from August 17 to September

---

[3] The 2016 ROD/RMP is available at: https://eplanning.blm.gov/eplanning-ui/project/57902/570 (last visited Nov. 8, 2022). BLM also published an RMP for the Southwestern Oregon region at this time.

17, 2021. *Id.* at 3. The Draft EA analyzed five action alternatives capable of meeting the Siuslaw Field Office's ASQ over a multi-year timeframe, while also complying with the 2016 RMP's management direction, including provisions applicable to fire and fuels and the protection of threatened and endangered species. EA at 8-11.

On March 31, 2022, the Siuslaw Field Office issued the Final EA, Finding of No Significant Impact ("FONSI"), and Decision Record ("DR") selecting Alternative 4 as a strategy for managing the Siuslaw HLB Landscape area in accordance with the 2016 RMP. *See* DR at 4-5, attached as Ex. 2. Out of the 13,225 HLB acres managed by the Siuslaw Field Office, BLM selected the alternative that would harvest between 1,404 and 2,305 acres per decade. *Id.* at 3. But the DR made clear that it "does not authorize any specific implementations actions[.]" *Id.* at 1. Instead, the DR simply "outlines a program of work for managing the Harvest Land Base within the Siuslaw HLB Landscape Plan project area" "in conformance with the [2016 RMP]." *Id.* at 1, 2.

C.     **Procedural History**

The Plaintiffs here, Cascadia Wildlands and Oregon Wild, appealed the DR to the Interior Board of Land Appeals, requesting a stay on April 28, 2022. *Cascadia Wildlands et al.,* IBLA 2022-172, at 1 (Order, Appeal Dismissed; Petition for Stay Denied as Moot, June 13, 2022). The Board ruled that the Appellants lacked standing under its regulations and dismissed the appeal. *Id.* at 11. Specifically, the Board explained that the Appellants' alleged harms were not "real and immediate" because those injuries "depend on ground-disturbing activities that the DR does not authorize and that could only occur if [the Siuslaw Field Office] separately approves a site-specific project." *Id.* at 7. The Board also rejected the Appellants' argument that a mere "information injury" was sufficient to establish standing. *Id.* at 11 (internal citations

omitted). Because the DR merely sets the stage for a multi-decade project, the Board ruled that Plaintiffs were not "adversely affected" by this "programmatic decision." *Id.* at 6, 9.

Plaintiffs then filed suit in this Court challenging BLM's decision to approve the Siuslaw HLB Landscape Plan, alleging five separate violations of NEPA. They allege that BLM failed to describe the project area with sufficient clarity, consider "significant aspects" of the Siuslaw Plan, take a hard look at the environmental site-specific environmental impacts, take a hard look at cumulative impacts, and prepare an Environment Impact Statement ("EIS"). Plaintiffs, however, do not allege that the BLM has taken any action to implement the challenged Landscape Plan. *See generally* Compl., ECF No. 1.

## II.   LEGAL STANDARD

Federal Defendants move to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The party invoking the Court's subject-matter jurisdiction—here, Plaintiffs—bears the burden of proving it. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (citing *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007)); *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). A federal court is presumed to lack jurisdiction in a particular case unless the plaintiff makes a showing to the contrary. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968-69 (9th Cir. 1981). The plaintiff also has the burden of establishing "standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).

On a motion to dismiss for lack of subject matter jurisdiction, "[n]o presumptive truthfulness attaches to plaintiff's allegations." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). A court addressing this motion is not restricted to the face of the pleadings. *Robinson*, 586 F.3d at 685; *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Rather, the court may

consider declarations or other evidence if necessary to resolve factual questions bearing on the jurisdictional issue. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (citing *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983)). Such a review of the record does not convert this motion into one for summary judgment. *Id.* If a federal court finds that it lacks subject matter jurisdiction at any time, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

### III.  ARGUMENT

Plaintiffs have failed to allege any injuries that will result from BLM's approval of the Siuslaw HLB Landscape Plan. Instead, their alleged injuries are tied to potential future decisions by BLM authorizing future commercial timber harvests. Absent an imminent injury, Plaintiffs' case should be dismissed of lack of standing and because their claims are not ripe.

#### A.  Plaintiffs Lack Standing to Bring Their Claims

##### 1.  Plaintiffs Must Demonstrate that the Challenged Action Will Threaten Imminent Injury to the Plaintiffs' Interests

A court has an independent obligation to ensure a plaintiff has standing in every matter. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Absent Article III standing, there is no judicial authority to hear a case. *Summers*, 555 U.S. at 492. The requirements of standing make up an "irreducible constitutional minimum." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Essential to standing is the requirement that the plaintiff proves an "imminently threatened injury." *Summers*, 555 U.S. at 492. The injury must be "concrete and particularized," "actual or imminent," and neither "conjectural [n]or hypothetical." *Friends of the Earth v. Laidlaw Env'tl Servs. (TOC)*, 528 U.S. 167, 180-81 (2000). Since 'injury-in-fact' is a constitutional "hard floor," the plaintiff's burden does not soften even if Congress has created a related procedural statute. *Summers*, 555 U.S. at 497. Moreover, when the government action

does not require or forbid any action from the plaintiffs, injury is "substantially more difficult" to establish.  *Lujan*, 504 U.S. at 562.

In the environmental context, to demonstrate injury plaintiffs must show imminent harm to their aesthetic and/or recreational use of an area.  *Sierra Club v. Morton*, 405 U.S. 727, 734-36 (1972).  This means "not necessarily injury to the environment, but injury to the plaintiff." *White Tanks Concerned Citizens v. Strock*, 563 F.3d 1033, 1038 (9th Cir. 2009) (citing *Friends of the Earth*, 528 U.S. at 182).  In any case, the personalized injury must be "certainly impending." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).  And concerns "of hypothetical future harm" are not "certainly impending." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 416 (2013).

> **2.    Plaintiffs Have Not Alleged Any Imminent Harm from the Landscape Plan**

Plaintiffs lack standing because they have not alleged an imminent injury to any of their environmental interests.  They allege that their aesthetic, recreational, and other interests will be harmed "*if* the BLM implements the Siuslaw Project as authorized."  Compl. ¶ 21 (emphasis added), ECF No. 1.  But the Siuslaw HLB Landscape Plan does not and cannot cause injury to Plaintiffs, because it "does not authorize any specific implementation-actions," which may include timber harvests.  DR at 1.  Instead, in accordance with the 2016 RMP, the Landscape Plan establishes an intermediate management strategy for forest management activities in the HLB area that BLM may authorize in subsequent decision documents.  *Id.*

Before commercial timber sales occur, BLM will take several procedural steps. If BLM proposes an implementation decision, it will complete a tiered EA, a categorical exclusion review, or a Determination of NEPA Adequacy.  DR at 1.  BLM will then circulate that document to the public for a 30-day public comment period before issuing a decision record for

Page 8 - Defendants' Motion to Dismiss

the proposed project. *Id*. "This comment period will begin a minimum of 3-months prior to the anticipated sale date for all commercial timber sales." *Id*. In addition, prior to making any decision implementing the Landscape Plan, BLM must first complete consultation with the National Marine Fisheries Service pursuant to the Endangered Species Act, and with the Oregon State Historic Preservation Office pursuant to the National Historic Preservation Office. *Id.* at 5; *see also* EA at 69-70. Additionally, BLM will report information for each implementation project to the U.S. Fish and Wildlife Service prior to project implementation, pursuant to the terms of the Biological Opinion that covers the Siuslaw Landscape Plan. DR at 5.

Significantly, Plaintiffs attach their injury to these future timber sales—not the Landscape Plan itself. *See* Compl. ¶ 21, ECF No. 1. But that alleged injury is not imminent because BLM has not authorized any actions implementing the Landscape Plan. Plaintiffs point to the potential Power Down Timber Sale, which BLM had anticipated auctioning for sale in August 2023. *See id.* ¶¶ 99-100. But BLM has not authorized that implementation project, and it is no longer scheduled to be auctioned in August 2023.[4] BLM has not authorized any implementation project under the Siuslaw HLB Landscape Plan, and therefore Plaintiffs lack an imminent, non-speculative injury sufficient to establish standing. *See Summers*, 555 U.S. at 496 (finding that plaintiffs lacked standing where they failed to show "*any* particular timber sale or other project" implementing a Forest Service rule would cause them harm).

Plaintiffs' lack of standing is further confirmed by their declarations, where they assert interests in the general area surrounding the Siuslaw Field Office, but fail to demonstrate any imminent harm from any approved timber harvests. Doug Heiken alleges, for example, that his

---

[4] The latest schedule is available at: https://www.blm.gov/or/resources/forests/index.php (last visited: November 9, 2022). This schedule shows no sales under the challenged Siuslaw HLB Landscape Plan, such as the "Power Down Timber Sale" or any others, for 2023.

Page 9 - Defendants' Motion to Dismiss

interests in the environment would be harmed if the Power Down Timber Sale were authorized. Decl. of Doug Heiken ¶¶ 5-7, ECF No. 1-1. But as already discussed, the Landscape Plan does not authorize the Power Down Timber sale; instead, BLM must issue a separate decision authorizing the sale. Notably, Mr. Heiken submitted a declaration in the IBLA proceedings, and the Board concluded that it was not sufficient to establish standing because his alleged harms were dependent on "ground-disturbing activities that the DR does not authorize and that could only occur if [the Siuslaw Field Office] approves" projects implementing the DR. IBLA 2022-172 at 7. The Declarations of David Barta, ECF No. 1-2, and Ronna Friend, ECF No. 1-3, similarly assert harms from potential timber harvests that BLM has not authorized. Accordingly, Plaintiffs' declarations are insufficient to establish standing.

Finally, Plaintiffs cannot establish standing merely by alleging that they "have organizational interests in the proper and lawful management of" the Siuslaw Region. Compl. ¶ 22, ECF No. 1. An alleged "procedural injury, standing on its own, cannot serve as an injury-in-fact." *Wilderness Soc. v. Rey*, 622 F.3d 1251, 1260 (9th Cir. 2010); *see also Summers*, 555 U.S. at 496 ("Deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right in vacuo—is insufficient to create Article III standing"). Accordingly, Plaintiffs' participation in the administrative process leading to BLM's authorization of the Landscape Plan is not sufficient to establish standing.

      **B.**    **Plaintiffs' Claims Are Not Ripe**

Plaintiffs' claims are also not ripe. Absent special circumstances, such as a rule that requires a plaintiff to adjust their own conduct, it is often the case that agency "actions will not be ripe for challenge until some further agency action or inaction more immediately harming the plaintiff occurs." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 892 (1990). The Supreme Court has previously relied on three factors to determine whether a plaintiff's claim is ripe to bring a

Page 10 - Defendants' Motion to Dismiss

facial challenge. *Ohio Forestry v. Sierra Club*, 523 U.S. 726, 728 (1998). First, "whether delayed review would cause hardship to the plaintiffs;" second, "whether judicial intervention would inappropriately interfere with further administrative action;" and finally, "whether the courts would benefit from further factual development of the issues presented." *Id.* at 733. The *Ohio Forestry* factors demonstrate that Plaintiffs' claims are not ripe.

First, delayed review of the Siuslaw HLB Landscape Plan would not pose a hardship to the Plaintiffs. Hardships must be "sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." *Abbott Labs. v. Gardner*, 387 U.S. 136, 152-53 (1967). And this hardship refers to "adverse effects of a strictly legal kind," such as the creation of new "legal rights or obligations." *Ohio Forestry*, 523 U.S. at 733. BLM's approval of the Landscape Plan does not impact the Plaintiffs' legal rights or obligations and poses no imminent threat to their interests because it does not authorize any action implementing the Plan. Thus, like the plan in *Ohio Forestry*, the Landscape Plan here does not "give anyone a legal right to cut trees, nor does it abolish anyone's legal authority to object to trees being cut" thus making their claims unripe. *Id.* at 733. [5]

---

[5] In *Ohio Forestry*, the plaintiffs challenged a U.S. Forest Service Forest Plan under the National Forest Management Act, and the Supreme Court suggested in dicta that "a person with standing who is injured by a failure to comply with the NEPA procedure may complain of that failure at the time the failure takes place, for the claim can never get riper." 523 U.S. at 737. In cases such as this, where the challenged decision will not impact plaintiffs unless and until the agency takes a subsequent action, the claim is not ripe, and there is no basis for exempting NEPA challenges from the traditional ripeness inquiry. *See Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 480-82 (D.C. Cir. 2009)). Defendants recognize, however, the Ninth Circuit has applied the *Ohio Forestry* dicta to hold that NEPA procedural challenges to a land use plan can be ripe prior to implementation, while substantive claims under NFMA and FLPMA are not. *See Kern v. BLM*, 284 F.3d 1062, 1070 (9th Cir. 2002) (A"NEPA challenge to an EIS is fundamentally unlike a NFMA (or FLPMA) challenge to a [land use plan]."). And ripeness aside, a plaintiff must still demonstrate that it has standing to bring a NEPA claim. Ohio Forestry, 532 U.S. at 737.

Second, allowing a facial challenge to the Siuslaw HLB Landscape Plan at this stage will "hinder agency efforts to refine its policies." *Id.* at 735. Out of the 13,225 acres analyzed in the EA, the selected alternative only authorizes commercial thinning and regeneration harvest on somewhere between 1,404 and 2,305 acres per decade. DR at 3. Addressing Plaintiffs' claims now would require the Court to pass judgment on complex forestry issues for stands of trees that the agency may never choose to offer for sale. If and when BLM proposes to offer particular areas for sale, Plaintiffs will have the opportunity to review that specific proposal and provide input regarding the specific impacts of such a proposal. *See* DR at 1. Permitting the litigation now would short-circuit the agency's review of future proposals to harvest timber and could distract BLM from its efforts to address concerns raised by the Plaintiffs and other entities regarding potential future timber sales.

Finally, the Court would benefit from deferring consideration of Plaintiffs' challenge until it can conduct review in the richer factual context that implementation-level decisions will provide. Facial review of the Siuslaw HLB Landscape Plan "would require time-consuming judicial consideration of the details of an elaborate, technically based plan, which predicts consequences that may affect many different parcels of land in a variety of ways, and which effects themselves may change over time." *Ohio Forestry*, 523 U.S. at 736. Litigation at this stage would require the court to merely guess what areas will be offered for sale and the nature of any particular timber harvest. Since this Court would be better served by deferring review until it can be conducted in the context of an implementation decision, Plaintiffs' challenge should be dismissed as unripe.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint must be dismissed for lack of jurisdiction.

Dated this 14th day of November, 2022

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

<u>*/s/ Luther L. Hajek*</u>
Luther L. Hajek, Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
999 18th St.
South Terrace – Suite 370
Denver, CO 80202
Tel: 303-844-1376 / Fax: 303-844-1350
e-mail: luke.hajek@usdoj.gov

*Attorney for Defendants*